RASHAD WILLIAMS *v.* COMMISSIONER
OF CORRECTION
(AC 33680)

Gruendel, Alvord and Flynn, Js.

Argued February 4—officially released May 21, 2013

*Daniel C. Ford*, special public defender, for the appellant (petitioner).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Angela R. Macchiarulo*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, Rashad Williams, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. He claims that the court abused its discretion when it denied his petition for certification to appeal and improperly concluded that he had not established that his trial counsel rendered ineffective assistance. We dismiss the petitioner's appeal.

The facts that the habeas court adopted were set forth by this court in the petitioner's direct appeal from his judgment of conviction in the underlying criminal matter. As recounted by this court in that proceeding, "[t]he jury reasonably could have found the following facts. On August 19, 2002, at approximately 4 p.m.,

Donnell Williams,[1] the victim, drove to Hartford in his Oldsmobile Aurora to pick up Marlon Monts, his first cousin. The two men drove to the house of the victim's girlfriend in New Britain to get supplies to clean his car. They then went to a commercial car wash in New Britain.

"The victim drove the car to one of the vacuum cleaners at the car wash. While the victim was cleaning the inside of the vehicle, Monts sat on a curb near the vacuum cleaner and read a newspaper. Around this time, a Cadillac entered the first self-service bay at the car wash. Monts recognized the car as one that he had seen earlier that day when he and the victim were driving through Hartford. Monts recalled that when he saw the Cadillac in Hartford, the [petitioner] was driving the car. When Monts observed the Cadillac at the car wash, the [petitioner], Norman Moore and one other African-American man were standing around the car. They were not washing or vacuuming the car; one was pacing around, another was sitting on one of the vacuum cleaners and the [petitioner] was standing in the bay. Both Monts and the victim thought it was suspicious that the three men were loitering in the self-service bay of the car wash, but were not washing the car. Nonetheless, the victim and Monts had no interaction with the group of men at that time.

"Soon after Monts observed the Cadillac in the first bay, the victim moved his car into one of the other self-service bays to wash his car. The Cadillac left the car wash at this time. After the victim finished washing his car, he drove it around to the back of the car wash, away from the vacuum cleaners and the self-service bays, to dry his car. Monts sat in the passenger seat

---

[1] Donnell Williams is not related to the petitioner, Rashad Williams. See *State* v. *Williams*, 94 Conn. App. 424, 426 n.2, 892 A.2d 990, cert. denied, 279 Conn. 901, 901 A.2d 1224 (2006).

listening to music while the victim dried his car and fixed the stereo system that was located in the trunk of his car. Monts and the victim then noticed the three men who had been in the Cadillac earlier walking toward them. Monts got out of the car.

"One of the men walked toward the hood of the victim's car, another walked toward the middle of the driver's side and Moore walked toward the trunk area, where the victim was standing. The victim noticed that the man walking toward the middle of the car was wearing a black glove, which stood out as unusual because it was August. As a result, the victim asked Monts to pass him his handgun, which was located next to the console, on the side of the car seat. Immediately after Monts gave the victim the gun, Moore stopped about four feet from the victim. Moore fired a gunshot at the victim, and the victim fired back.

"Unsure whether the victim had survived the gunshot, Monts ran through some nearby bushes into a neighborhood adjacent to the car wash and called the police. In the meantime, the men ran back toward the self-service bays, and two of them sped away in the Cadillac. The victim got back in his car and tried to follow the Cadillac in order to obtain the license plate number of the car. He was unable to obtain the license plate number, however, and after realizing that he had been shot in the chest, called the police using a cellular telephone that Monts had left on the car seat. At the direction of the police dispatcher, the victim returned to the car wash to wait for the police to arrive.

"Just after 8:30 p.m., Michael Baden, a sergeant with the New Britain police department, and several other officers arrived at the scene. Baden told the other officers to move the crowd that had gathered away from the area and to secure the scene. He then discovered Moore lying on the ground with a gunshot wound to

the chest. He was not moving or breathing. The New Britain emergency medical services, which had arrived on the scene immediately after Baden, took Moore to New Britain General Hospital. Moore later died from his injuries.

"At the same time, Angel Escobales, an officer with the New Britain police department, discovered the victim in his car in the corner of the car wash parking lot. The victim had a gunshot wound to his left side. He was able to speak to the officers, but he was having difficulty breathing. After being interviewed by Escobales, the victim was taken to Hartford Hospital, where he was treated for his injuries and released.

\* \* \*

"During the investigation that evening, Cary Carlone, a detective with the New Britain police department, followed up on a report of the license plate number of the Cadillac. Carlone discovered that the car was registered to the [petitioner]. At approximately 2:45 a.m. on August 20, 2002, Carlone located the Cadillac behind a residence in Hartford that belonged to an aunt of the [petitioner]. Although Carlone tried to locate the [petitioner] at that time, the detective was unable to do so.

"Later that night, however, Patrick Meehan, a state police trooper, encountered the [petitioner] on the westbound side of Interstate 84 in West Hartford. The [petitioner] was in a Toyota that was parked on the shoulder in the breakdown lane. Although he did not have any identification with him, the [petitioner] gave Meehan his name and his date of birth. Upon reporting the name to the state police dispatcher, Meehan discovered that the [petitioner] was suspected of being involved in the incident at the car wash in New Britain. An officer from the New Britain police department subsequently arrived to take the [petitioner] into custody." (Footnote omitted.) *State* v. *Williams*, 94 Conn. App.

424, 426–29, 892 A.2d 990, cert. denied, 279 Conn. 901, 901 A.2d 1224 (2006).

The petitioner was convicted, after a jury trial, of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (5) and 53a-48, assault in the first degree in violation of General Statutes §§ 53a-59 (a) (5) and 53a-8 (a), and attempt to commit murder in violation of General Statutes §§ 53a-54a, 53a-49 (a) (2) and 53a-8 (a). Id., 425. He appealed to this court, claiming that there was insufficient evidence to convict him of any of these charges, and this court affirmed the judgment of the trial court. Id., 425–26. Our Supreme Court denied his petition for certification to appeal from the judgment of this court. *State* v. *Williams*, 279 Conn. 901, 901 A.2d 1224 (2006).

On January 13, 2011, the petitioner filed an amended petition for a writ of habeas corpus claiming, inter alia,[2] that the petitioner's trial counsel provided ineffective assistance by failing to advance an identity defense. Specifically, the petitioner claimed that his trial counsel was ineffective because he failed to: (1) hire an eyewitness identification expert; (2) attack the identification procedures used by the police department; and (3) effectively cross-examine the eyewitnesses about the petitioner's presence at the scene of the crime. On June 24, 2011, the habeas court issued a memorandum of decision denying his petition for a writ of habeas corpus.

---

[2] The petitioner also claimed that he received ineffective assistance from his trial counsel because counsel failed to: (1) effectively explain to the petitioner his potential exposure to jail time and his right to decide whether to testify; (2) effectively impeach and cross-examine the victim and Monts; (3) present a " 'lack of forensic evidence' " defense; (4) present an alibi defense; and (5) present a third party culpability defense. The habeas court concluded that no ineffective assistance of counsel stemmed from any of these claims, and the petitioner does not contest that determination on appeal. We therefore restrict our review to the sole ground that the petitioner raises in this appeal: whether the petitioner's trial counsel provided ineffective assistance by failing to advance an identity defense.

In addition to addressing the claims that the petitioner does not raise on appeal, the habeas court found that the petitioner's trial counsel, Claud Chong, "did not miss the issue of identity but instead made a deliberate, strategic decision not to contest it. He testified credibly that he was familiar with some of the contemporary research on eyewitness identifications and that he could have retained an expert. He chose not to do so primarily because the petitioner, in conversations with Chong, did not dispute his presence at the scene. Instead, the petitioner suggested that Monts and [the victim] were familiar with him and that they had had a prior run-in.

"Chong also testified that he was faced with a difficult client who said different things at different times.[3] Chong nevertheless endeavored to provide his client [with] a defense. Chong essentially decided the best approach was to argue that the state had not proven beyond a reasonable doubt that the petitioner had any criminal involvement in the shooting. Accordingly, Chong made the following closing argument to the jury: 'There was no evidence that [the petitioner] had a gun. There was no evidence that [the petitioner] fired a gun. There was no evidence that he was part of a conspiracy, a plan, an agreement to assault [the victim] or to kill [the victim] as the state has alleged. So, therefore when you go over all of the evidence, you are left with one conclusion. The evidence is insufficient and we don't really know what happened.'

"The argument was a valid one. Given that there was no direct evidence that the petitioner shot or even carried a weapon, or had any physical contact with any of the victims, there was good reason to question whether the petitioner was criminally involved in an

---

[3] The habeas court noted that "[t]he petitioner's disruptive behavior in court during the habeas trial, and his cavalier allegations that Chong was a liar, confirmed Chong's point."

assault, or rather was just an innocent bystander. Indeed, the sufficiency of the evidence on all three counts was the only issue raised and addressed on the merits in the Appellate Court. . . . Thus, it was within the realm of reasonable trial strategy for Chong to pursue a defense of no criminal involvement rather than misidentification. That being the case, there was no ineffective assistance of counsel." (Citation omitted.)

On appeal from the judgment of the habeas court, the petitioner focuses his argument on Chong's failure to cross-examine the victim and Monts about the petitioner's presence at the scene of the crime. He also mentions that Chong should have attacked the validity of the identification based on the potential flaws of relying on eyewitness testimony and identification from a photographic array. All of these arguments are advanced within the framework of the petitioner's general claim that his trial counsel rendered ineffective assistance by not advancing an identity defense. Determining whether any of the specific alleged errors constituted deficient performance requires an analysis of the dispositive issue in this appeal: whether Chong's failure to advance arguments to support an identity defense constituted ineffective assistance. We therefore review this general claim without addressing in detail each of the specific examples the petitioner provides as support for that claim.

"The standard of review for a habeas court's denial of a petition for certification to appeal requires the petitioner to prove that the denial of the petition for certification was an abuse of discretion and also that the decision of the habeas court should be reversed on the merits. . . . To prove an abuse of discretion, the petitioner must demonstrate that the resolution of the underlying claim involves issues [that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are

adequate to deserve encouragement to proceed further. . . . In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Crawley* v. *Commissioner of Correction*, 141 Conn. App. 660, 664, 62 A.3d 1138 (2013).

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution." (Internal quotation marks omitted.) *Lopez* v. *Commissioner of Correction*, 142 Conn. App. 53, 57, 64 A.3d 334 (2013). "When a [petitioner] complains of the ineffectiveness of counsel's assistance, the [petitioner] must show that counsel's representation fell below an objective standard of reasonableness." *Strickland* v. *Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "A [petitioner's] claim that counsel's assistance was so defective as to require a reversal of the conviction . . . has two components. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 141 Conn. App. 626, 632, 62 A.3d 554 (2013).

"[T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Internal quotation marks omitted.)

*Griffin* v. *Commissioner of Correction*, 137 Conn. App. 382, 391, 47 A.3d 956, cert. denied, 307 Conn. 921, 54 A.3d 182 (2012). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland* v. *Washington*, supra, 466 U.S. 689. Likewise, "there is no expectation that competent counsel will be a flawless strategist or tactician . . . ." *Harrington* v. *Richter*, 562 U.S. 86, 110, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). The standard is one of reasonableness, and "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . .

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. . . .

"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may

not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions." *Strickland* v. *Washington*, supra, 466 U.S. 690–91.

In the present case, the petitioner claims that the habeas court abused its discretion by denying his petition for a writ of habeas corpus under the deficient performance prong of *Strickland* due to Chong's failure to present an identity defense.[4] The habeas court found, however, that Chong considered an identity defense, but after conducting witness interviews and reviewing police reports, he chose to pursue a defense that he believed would be more successful. The reason for not choosing an identity defense came from conversations that Chong had with the petitioner prior to trial. In those conversations, Chong learned that Monts and the victim, the two eyewitnesses who identified the petitioner, knew the petitioner prior to the incident at the car wash, and that the incident could have arisen because of a prior dispute between the eyewitnesses and the petitioner. According to Chong's testimony before the habeas court, "[the petitioner] implied on numerous occasions that he was present at the scene

---

[4] We note that Chong did raise the issue of identity in his closing argument. The habeas court found that "Chong testified that he made this argument, not because identity was his principal defense, but because it offered another opportunity for the jury to find reasonable doubt. The petitioner does not claim ineffective assistance from the fact that Chong essentially raised identity as an alternate theory." In this appeal, the petitioner claims that Chong's raising of an identity defense in his closing argument, without exploring such a defense throughout the trial, is indicative of his realization that he should have pursued an identity defense from the onset. We are not persuaded that mentioning identity during closing argument as part of a broader argument in which Chong was attempting to cast reasonable doubt is probative of the petitioner's claim that Chong should have advanced an identity defense argument throughout the trial.

of the shootout of the car wash." Further investigation by Chong revealed that the petitioner's car was identified near the scene of the incident.

Chong investigated the possibility of presenting an identity defense and learned from the petitioner and other sources that pursuing such a defense was fruitless, as it was very likely that the petitioner was present at the scene of the crime. He decided that arguing that the state had insufficient evidence to prove that the petitioner had the requisite intent to be convicted of the conspiracy, assault or attempted murder was a preferable strategy to an argument that the petitioner was not present when the victim was shot. This was Chong's strategic decision, and it was based, in part, on what the petitioner told him. Taking into consideration the facts that Chong had available at the time when he formulated his theory of defense, the habeas court concluded that Chong's strategy was a reasonable exercise of professional judgment.

After a thorough review of the record, we conclude that the habeas court properly concluded that the petitioner failed to sustain his burden of demonstrating that Chong performed deficiently. The petitioner failed to establish that the issues he raised are debatable among jurists of reason, that a court could resolve them in a different manner or that the questions he raised are adequate to deserve encouragement to proceed further. See *Crawley* v. *Commissioner of Correction*, supra, 141 Conn. App. 664. Accordingly, we conclude that the court did not abuse its discretion in denying the petition for certification to appeal from the judgment denying his amended petition for a writ of habeas corpus.

The appeal is dismissed.

In this opinion the other judges concurred.