ANGEL GONZALEZ *v.* COMMISSIONER
OF CORRECTION
(AC 33057)

DiPentima, C. J., and Gruendel and Bear, Js.

Submitted on briefs April 12—officially released August 13, 2013

*Justine F. Miller*, assigned counsel, filed a brief for the appellant (petitioner).

*Gail P. Hardy*, state's attorney, and *Mitchell S. Brody* and *Angela R. Macchiarulo*, senior assistant state's attorneys, filed a brief for the appellee (respondent).

*Opinion*

DiPENTIMA, C. J. The petitioner, Angel Gonzalez, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the court abused its discretion when it denied his petition for certification to appeal and improperly rejected the claim that his criminal trial counsel provided ineffective assistance. We disagree, and, accordingly, dismiss the appeal.

The following facts, as set forth in the petitioner's direct appeal to this court, and procedural history are relevant to this appeal. Two murders occurred on November 15 and 16, 2003. The petitioner was charged and convicted of the second murder.

On the evening of November 15, 2003, the first murder occurred when Smaely Tineo shot and killed Michael Zuckowski. *State* v. *Gonzalez*, 106 Conn. App. 238, 240–41, 941 A.2d 989, cert. denied, 287 Conn. 903, 947 A.2d

343 (2008). Shortly after the shooting, the petitioner, who worked as a clown and went by the names "Clown" and "Clowny," was recorded by a restaurant's video camera riding his unicycle in a parking lot across the street from the murder site. Id., 241. While investigating the crime, the police learned that Tineo was friends with the petitioner, and significantly, that Zuckowski was friends with the victim of the second murder, Lamar Williams. Id. In the early morning hours of the following day, November 16, 2003, Williams was in a hallway of a building on South Marshall Street, engaged in a drug sale. Id. The second murder occurred when the petitioner, wearing a mask, entered the building and shot Williams two times. Id. The police arrived on the scene to find Williams dead from his gunshot wounds. Id. The petitioner was arrested for this murder and ultimately tried before a jury. Id.

During the petitioner's criminal trial, the state's case included testimony from Charles McClairen, Trevor Bennett, and Jasenia Rodriguez. Id., 242–43, 254–55. McClairen testified that he and the petitioner, whom he knew as "Clown," were incarcerated together. Id., 242. McClairen testified that in late March or early April, 2003, the petitioner had told him that he had shot a person on South Marshall Street. Id. Bennett testified that he and the petitioner, whom he also knew as "Clown," had been cellmates in January, 2004. Id., 243. Bennett testified that the petitioner admitted to having killed Williams and told him that Tineo was responsible for Zuckowski's death. Id. Bennett further testified that the petitioner had told him that he and Tineo were close, " 'like brothers.' " Id. The jury also heard testimony from Rodriguez, a former girlfriend of Williams. Id., 254. Rodriguez testified that on November 13, 2003, three days before the second murder, the petitioner confronted her and pushed her against a wall. Id., 254–55. She testified that the petitioner was wearing a clown

mask and that he had told her that Williams was dead. Id., 255.

After hearing this testimony and considering other evidence, the jury found the petitioner guilty of murder in violation of General Statutes § 53a-54a. Id., 240. Thereafter, the petitioner filed a motion for a new trial. Id., 258. At the hearing on the motion, the petitioner orally amended his motion and sought relief on the ground of newly discovered evidence. Id. This evidence, founded on the sworn statements of four incarcerated individuals, sought to expose an alleged jailhouse conspiracy to wrongfully inculpate the petitioner. Id., 259. The trial court, *Hon. John F. Mulcahy, Jr.*, judge trial referee, denied the motion. Id. This court rejected all of the petitioner's claims on appeal, including his claim related to the motion for a new trial, and affirmed the judgment of conviction. Id., 240.

Following his unsuccessful appeal, the petitioner filed an amended petition for a writ of habeas corpus, alleging two counts of ineffective assistance of counsel. The petitioner alleged that his criminal trial counsel, John Stawicki, "failed to adequately investigate and prepare an appropriate defense for the petitioner's trial, failed to call defense and impeachment witnesses on behalf of the petitioner, failed to properly cross-examine [the] state's witnesses . . . McClairen and . . . Bennett, and failed to prepare and present discoverable defense testimony and evidence necessary for a fair trial."[1]

The habeas court, *Fuger, J.*, heard testimony from the petitioner, Stawicki, and the four inmate witnesses

---

[1] In his amended petition, the petitioner also alleged that his trial counsel was ineffective for failing to object properly to hearsay testimony. This claim, however, was abandoned at the habeas court and is not the subject of this appeal.

with information regarding the alleged jailhouse conspiracy. Concluding that the petitioner had failed to meet his evidentiary burden of proof, the court rejected all of the petitioner's claims and denied his amended petition. Specifically, the court found that Stawicki's decision not to investigate and call the four inmate witnesses was premised on reasonable trial strategy. The court then denied the petition for certification to appeal, and this appeal followed. Additional facts will be set forth as necessary.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"We examine the petitioner's underlying claim of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts

found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Barlow* v. *Commissioner of Correction*, 131 Conn. App. 90, 93–94, 26 A.3d 123, cert. denied, 302 Conn. 937, 28 A.3d 989 (2011). "The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 717, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

"Furthermore, it is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677–78, 51 A.3d 948 (2012).

The following additional findings made by the habeas court are necessary for our discussion. At the habeas trial, the petitioner testified that George Flores, a public defender, initially served as his attorney until a conflict of interest was discovered during jury selection. Due to the conflict, Stawicki was appointed and assumed the responsibilities of counsel. The petitioner testified that Flores had used an investigator and that Flores' file was given to Stawicki. Further, the petitioner testified that he had told Stawicki of the jailhouse conspiracy.

In addition to hearing this testimony from the petitioner, the court heard testimony from the four inmate witnesses, and noted the following. Cephas McBean, a convicted felon, testified that another inmate and former cellmate, Jonathan Ward, had asked him to lie about the petitioner's responsibility in the murder of Williams. The court found that McBean had no direct knowledge of the murder. Walter Lawson, Jr., another convicted felon, also testified that Ward had asked him to lie about the petitioner's responsibility in the murder of Williams. Another inmate, Anthony McKenzie, testified that he overheard a conversation between Ward and Bennett in which they were "plotting" to receive a more lenient sentence from the state through their cooperation. Abraham Hannah, also a convicted felon, indicated that he heard Bennett say that the petitioner did not shoot anybody. The court found that "Lawson, McKenzie and Hannah were not . . . at the murder scene and had no direct knowledge or evidence regarding the murder."

The court also heard testimony from Stawicki. Stawicki testified that he spoke with Flores, the prosecutor, and the investigator after being appointed as counsel. He testified that the investigation was complete at the time he assumed responsibility. Stawicki also stated that the petitioner told him of the jailhouse conspiracy.

Further, Stawicki testified that he "was concerned about getting the jury to believe that Ward, who was a friend of Williams, was attempting to lay blame for the crime on someone who did not commit the crime instead of on the actual perpetrator." Stawicki also testified that he would not have called McBean, Lawson, McKenzie, and Hannah to testify during the criminal trial, despite being told of the jailhouse conspiracy, because doing so could have led the state to call Ward as a witness. According to Stawicki, had Ward been called as a witness, he could have testified about his reasons for wanting to see the petitioner punished, which consequently, might have led the jury to doubt the petitioner's innocence.

The following legal principles are relevant to our resolution of this appeal. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable . . . . Nevertheless, [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . .

"Inasmuch as [c]onstitutionally adequate assistance of counsel includes competent pretrial investigation; *Siemon* v. *Stoughton*, 184 Conn. 547, 554, 440 A.2d 210 (1981); [e]ffective assistance of counsel imposes an obligation [on] the attorney to investigate all surrounding circumstances of the case and to explore all avenues that may potentially lead to facts relevant to the defense of the case. . . .

"Nevertheless, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; [but] strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

"The reasonableness of counsel's actions may be determined or substantially influenced by the [petitioner's] own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the [petitioner] and on information supplied by the [petitioner]. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has

said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 679–81 (citing supporting case law).

On appeal, the petitioner argues that Stawicki was deficient by failing to conduct, at the time of trial, an adequate investigation into the jailhouse conspiracy, which according to the petitioner, would have led to the discovery of the four inmate witnesses, who, in turn, could have been called to impeach two of the state's witnesses, McClairen and Bennett.[2] The petitioner further argues that, contrary to the court's determination, this was not reasonable trial strategy. We are not persuaded.

In its memorandum of decision, the court addressed Stawicki's trial strategy and noted that he was aware of the jailhouse conspiracy during the trial, but was concerned that the jurors would not believe that Ward,

---

[2] To the extent the petitioner attempts to raise as a separate and distinct aspect of his claim Stawicki's decision not to call the four inmate witnesses, we conclude that this aspect has not been raised and briefed properly. The petitioner did not raise the failure to call these witnesses as a distinct aspect of Stawicki's alleged deficiency in his appellate brief. This secondary ground for deficiency is raised for the first time in his reply brief. "It is axiomatic that a party may not raise an issue for the first time on appeal in its reply brief. . . . Our practice requires an appellant to raise claims of error in his original brief, so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument. Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." (Citations omitted; internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 197, 982 A.2d 620 (2009). Accordingly, we only address the petitioner's claim as it relates to Stawicki's failure to investigate.

a friend of Williams, would conspire with other inmates to wrongfully charge the petitioner with Williams' murder, when doing so would allow the true perpetrator to escape prosecution. Mindful of the fact that there is a strong presumption that counsel's representation falls within the wide range of reasonable professional assistance, we are persuaded that the court properly concluded that Stawicki's decision not to continue the investigation of the four inmates was reasonable trial strategy. Stawicki testified that he had reviewed Flores' complete file, had been made aware of the alleged jailhouse conspiracy, and had been told of Ward's motives[3] for conspiring against the petitioner. He further testified that introducing evidence of the jailhouse conspiracy would have revealed Ward's involvement as the organizer, and further, his personal friendship with Williams. With this information, Stawicki reasoned, a jury could have determined that Ward, acting as Williams' friend, would have attempted only to conspire against Williams' actual murderer. Relying on these inferences, Stawicki stated that he was concerned that the jury would credit Ward's conspiracy as evidence of the petitioner's guilt. See *Strickland* v. *Washington*, 466 U.S. 668, 691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (counsel need not pursue investigation that would be fruitless or harmful to defense strategy); see also *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 681–82 and 682 n.12 (same). In light of these circumstances, Stawicki's strategic assessment of the jury's potential reaction to the conspiracy evidence was reasonable. Similarly, his strategic decision not to continue investigating reasonably comported with such an assessment. See, e.g., *Thompson* v. *Commissioner of Correction*, 131 Conn. App. 671, 695, 27 A.3d 86 (counsel not deficient when aware of content of witness testimony and

---

[3] Stawicki testified that the petitioner had told him that Ward's motivation stemmed merely from his dislike of the petitioner.

failed to interview witness because content unhelpful), cert. denied, 303 Conn. 902, 31 A.3d 1177 (2011).

The petitioner also argues that without further investigation into the conspiracy, and thus, not knowing the testimony of the inmates, Stawicki's decision was necessarily unreasonable. We are not persuaded. In support of his argument, the petitioner cites *Gaines* v. *Commissioner of Correction*, 125 Conn. App. 97, 109, 7 A.3d 395 (2010), aff'd, 306 Conn. 664, 51 A.3d 948 (2012), as well as other nonbinding authority. The petitioner's reliance on *Gaines* is misplaced, as it readily is distinguishable. In *Gaines*, counsel "did not claim that he made an informed decision not to investigate . . . in conjunction with a reasonable trial strategy." *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 683. Moreover, the facts there revealed that the missing witness whom counsel should have investigated and called was an alibi witness. Id. Here, by contrast, Stawicki made an informed decision not to investigate in furtherance of reasonable trial strategy, and the four inmates were not alibi witnesses. Contrary to the petitioner's argument, our habeas jurisprudence does not reveal such a rigid rule obligating counsel to know the exact testimony of a witness as a precondition to making a reasonable professional decision about his involvement. Under the petitioner's theory, the reasonableness standard pursuant to *Strickland* effectively would be eviscerated. We stress that "counsel need not track down each and every lead or personally investigate every evidentiary possibility before choosing a defense and developing it." (Internal quotation marks omitted.) *Williams* v. *Commissioner of Correction*, 100 Conn. App. 94, 103, 917 A.2d 555, cert. denied, 282 Conn. 914, 924 A.2d 140 (2007).

We conclude that the court properly determined that the petitioner failed to meet his burden of showing that Stawicki's decision not to investigate was deficient

under the performance prong of *Strickland.* Therefore, we are not persuaded that the issues raised in the petition for certification to appeal are debatable among jurists of reason, that a court could resolve the issues differently, or that the questions raised by the petitioner deserve encouragement to proceed further. See *Simms* v. *Warden,* supra, 230 Conn. 616. Accordingly, the petitioner has failed to demonstrate that the court abused its discretion in denying his petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.