******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LAWRENCE SMITH *v.* COMMISSIONER
OF CORRECTION
(AC 34321)

DiPentima, C. J., and Gruendel and West, Js.

*Argued October 17, 2013—officially released March 4, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Cobb, J.)

*Sarah F. Summons*, assigned counsel, for the appellant (petitioner).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David Clifton*, assistant state's attorney, for the appellee (respondent).

*Opinion*

DiPENTIMA, C. J. The petitioner, Lawrence Smith, appeals from the judgment of the habeas court denying in part his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly determined that he received effective assistance of trial and appellate counsel. We are not persuaded by the petitioner's arguments, and, accordingly, affirm the judgment of the habeas court.

A jury found the petitioner guilty of murder in violation of General Statutes §§ 53a-54a (a) and 53a-8 (a), felony murder in violation of General Statutes §§ 53a-54c and 53a-8 (a), conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (2), and hindering prosecution in the first degree in violation of General Statutes § 53a-165 (5). In affirming the petitioner's conviction, our Supreme Court noted the following facts underlying the crimes committed by the petitioner: "On July 21, 2000, Robert Marrow and Jonathan Rivers, acting on the orders of Miguel Estrella, a drug dealer in Meriden, met the victim, Juan Disla, who was a rival drug dealer, at a Dairy Queen in Meriden to rob him. During the course of the robbery, Marrow shot the victim in the leg. Marrow contacted Estrella for instructions and was told to drive to the [petitioner's] house. Marrow and Rivers took the victim, whom they had bound with duct tape, to the [petitioner's] house, where Estrella and the [petitioner] removed money and cocaine from the victim's vehicle. Thereafter, the [petitioner], Estrella, Rivers and Marrow drove the victim to a remote location in a wooded area in the Higganum section of Haddam, where the victim was suffocated to death. The four men left the victim's body in the woods and returned to Meriden. That evening, Estrella, Marrow, Rivers and some friends drove the victim's car to New York state and abandoned it on the highway, where it eventually was vandalized.

"The state also offered evidence, which the [petitioner] unsuccessfully challenges in this appeal, to establish the following additional facts. Two days after the murder, Estrella and the [petitioner] returned to the location of the victim's body with a chainsaw, plastic buckets and several containers of acid. The [petitioner] used the chainsaw to dismember the body while Estrella watched. The [petitioner] and Estrella then placed the body parts in the buckets and covered them with acid to destroy them. The [petitioner] subsequently disposed of any remains. The victim's body was never recovered, and no bloodstains, DNA or bones ever were found.

"The record reflects the following procedural history. In 2001, the [petitioner] was arrested in connection with the murder of the victim. He was charged with

conspiracy to commit murder in violation of §§ 53a-48 (a) and 53a-54a, and kidnapping in the first degree in violation of General Statutes § 53a-92. On December 5, 2001, after the [petitioner] had moved for a speedy trial, the state entered a nolle prosequi of the charges pursuant to the missing witness provision of General Statutes § 54-56b and Practice Book § 39-30. The state represented that Estrella, an essential witness in the case, was asserting his fifth amendment privilege against self-incrimination and therefore would be unavailable to testify. The [petitioner] filed a motion to dismiss the charges on the ground, inter alia, that he had been denied a speedy trial. The court, *Fasano, J.*, denied the motion, and thereafter, the [petitioner] was released from custody.

"Pursuant to a warrant dated March 9, 2005, the [petitioner] subsequently was rearrested in connection with the murder of the victim. He was charged in a long form information with murder, felony murder, conspiracy to commit murder, conspiracy to commit robbery in the first degree and hindering prosecution in the first degree. The [petitioner] pleaded not guilty and, after a jury trial, was found guilty of all the charges. In accordance with the verdict, the trial court, *Alexander, J.*, imposed a total effective sentence of seventy-five years imprisonment." (Footnotes omitted.) *State* v. *Smith*, 289 Conn. 598, 602–604, 960 A.2d 993 (2008).

Thereafter, the petitioner commenced this habeas action. In his second amended petition, filed September 13, 2011, the petitioner alleged that he had received ineffective assistance of counsel from his first attorney, Glenn Conway, who had represented him during certain pretrial proceedings. The petitioner further claimed that Attorney Leo Ahern had provided him with ineffective assistance of counsel during the criminal trial. Last, the petitioner alleged ineffective assistance from his appellate counsel, Attorney Elizabeth Inkster. The petitioner specifically argued that Conway and Ahern improperly failed to pursue a claim that the petitioner had a right to a speedy trial under *Barker* v. *Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), "because there was a considerable delay from the time that he was first arrested in 2001 to the time that jury selection commenced in 2005 and to the time that presentation of evidence commenced in 2006." In count two, the petitioner contended that Inkster improperly failed to present his *Barker* claim during his direct appeal to our Supreme Court. In count three, the petitioner claimed that Ahern had failed to investigate his defenses and improperly had advised him not to testify during the criminal trial. In count four, the petitioner raised a claim of actual innocence, and in count five, he alleged that he had not been advised properly of his ability to seek sentence review.

Following a two day trial, the habeas court issued

a memorandum of decision on January 20, 2012, and rendered judgment in favor of the respondent, the Commissioner of Correction, on counts one through four of the second amended petition.[1] With respect to counts one and two of the petition, the court found that Conway, Ahern, and Inkster did not perform deficiently by not raising a *Barker* claim. As to count three, the court found that Ahern's strategic decisions during the trial were not deficient and that the petitioner had failed to establish prejudice. It further found, with respect to the claim that the petitioner had been advised improperly not to testify, that Ahern's advice was objectively reasonable and that the petitioner had knowingly and voluntarily elected not to testify. Finally, the court found in favor of the respondent on the claim of actual innocence because "[t]he petitioner presented no evidence of this claim at trial and did not brief this issue." On February 1, 2012, the court granted the petition for certification to appeal from the partial denial of the petition for a writ of habeas corpus. This appeal followed.

Our standard of review in a challenge to the denial of a petition for a writ of habeas corpus is long established. We employ plenary review in examining the legal conclusions of the habeas court, and we consider whether those conclusions are legally and logically correct and supported by the factual record. *Davis* v. *Commissioner of Correction*, 140 Conn. App. 597, 602, 59 A.3d 403, cert. denied, 308 Conn. 920, 62 A.3d 1133 (2013); see also *Smith* v. *Commissioner of Correction*, 122 Conn. App. 637, 641, 999 A.2d 840 (2010), cert. denied, 300 Conn. 901, 12 A.3d 574 (2011). This court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous. *Davis* v. *Commissioner of Correction*, supra, 602. Further, the habeas judge is the "sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) Id.

I

We first address the petitioner's claims surrounding *Barker*. Specifically, the petitioner argues that Conway should have included a *Barker* claim in the pretrial motion to dismiss, Ahern should have raised the *Barker* claim during the trial, and Inkster should have taken steps in the direct appeal to present an adequate record on a *Barker* claim. We are not persuaded.[2]

Before addressing the claims against each attorney, we state the law regarding ineffective assistance of trial counsel. "The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the federal constitution, and by article first, § 8, of the constitution of Connecticut. In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show

that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . .

"With respect to the performance component of the *Strickland* test, [t]o prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. . . . Competent representation is not to be equated with perfection. The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. . . . Nowhere is it said, though, that such a presumption is irrebuttable. As with any refutable presumption, the petitioner may rebut the presumption on adequate proof of sufficient facts indicating a less than competent performance by counsel. . . .

"With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Citations omitted; internal quotation marks omitted.) *White* v. *Commissioner of Correction*, 145 Conn. App. 834, 840–42, 77 A.3d 832, cert. denied, 310 Conn. 947, 80 A.3d 906 (2013); see also *Spyke* v. *Commissioner of Correction*, 145 Conn. App. 419, 424, 75

A.3d 738 (claim of ineffective assistance of counsel will succeed only if performance and prejudice prongs are satisfied), cert. denied, 310 Conn. 932, 78 A.3d 858 (2013).

A

The petitioner argues that Conway, his attorney prior to trial, should have included a *Barker* claim in his motion to dismiss the charges. In a May 5, 2005 memorandum of law in support of the petitioner's motion to dismiss the charges, Conway stated that the petitioner had been arrested on February 1, 2001, and charged with conspiracy to commit murder and kidnapping in the first degree. The petitioner filed a motion for a speedy trial, and the state entered a nolle prosequi as to all charges. Conway further indicated that "[t]he basis for the nolle, as asserted by the state, was an essential witness, Miguel Estrella, would assert his Fifth Amendment privilege against self-incrimination and thus was unavailable to testify."[3] The court accepted the state's nolle and released the petitioner from custody. Criminal proceedings were reinstituted, and the petitioner was rearrested in March, 2005.

During the habeas trial, Conway testified that he had researched the issues of speedy trial rights and presented them to the criminal court in the best way he could. He further indicated that he had made a tactical decision on how to advance the petitioner's motion to dismiss and that the arguments he raised, which did not include a *Barker* claim, were the best way to have the charges against the petitioner dismissed. Conway also explained his analysis as to why a *Barker* claim would not succeed, namely, the likelihood that such a claim would fail as a result of application of the first and fourth *Barker* factors. See footnote 2 of this opinion.

"[J]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Gonzalez* v. *Commissioner of Correction*, 145 Conn. App. 16, 23–24, 75 A.3d 705, cert. denied, 310 Conn. 932, 78 A.3d 858 (2013); *Coward*

v. *Commissioner of Correction*, 143 Conn. App. 789, 800–801, 70 A.3d 1152, cert. denied, 310 Conn. 905, 75 A.3d 32 (2013).

The petitioner bears the burden of showing that Conway's actions fell below an objective standard of reasonableness. See *Williams* v. *Commissioner of Correction*, 142 Conn. App. 744, 752, 68 A.3d 111 (2013). Furthermore, we note that "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. . . . Likewise, there is no expectation that competent counsel will be a flawless strategist or tactician . . . ." (Citations omitted; internal quotation marks omitted.) Id., 753; see also *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 79, 967 A.2d 41 (2009) ("[a]s a general rule, a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if there [was] no . . . tactical justification for the course taken" [internal quotation marks omitted]).

The petitioner has failed to sustain his burden in this case. The habeas court correctly determined that Conway made a reasonable and sound tactical decision to file the motion to dismiss that did not include a *Barker* claim because he had reasonably concluded that it had little chance to succeed. Additionally, the court concluded that the petitioner had failed to demonstrate that he would have prevailed on his *Barker* claim. We note that the petitioner elected not to present the testimony of a legal expert at his habeas trial. "An expert witness is not essential to show that an attorney's performance was so deficient that it fell below the standard of reasonably effective assistance, but in many cases, expert testimony is useful." *Small* v. *Commissioner of Correction*, 98 Conn. App. 389, 394, 909 A.2d 533 (2006), aff'd, 286 Conn. 707, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008); see also *Gray* v. *Commissioner of Correction*, 138 Conn. App. 171, 179, 50 A.3d 406, cert. denied, 307 Conn. 929, 55 A.3d 570 (2012); *Urda* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-09-4003248-S (January 4, 2012).

This court recently stated: "[W]ith regard to the performance prong of *Strickland*, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . The law presumes that counsel is competent until evidence has been introduced to the contrary. . . . It is elementary jurisprudence that the determination of whether counsel's conduct was ineffective is a peculiarly fact bound inquiry. . . . Moreover, [i]t is well established that a petitioner in a habeas proceeding cannot rely on mere

conjecture or speculation to satisfy either the performance or prejudice prong [of *Strickland*] but must instead offer demonstrable evidence in support of his claim." (Citations omitted; internal quotation marks omitted.) *Martinez* v. *Commissioner of Correction*, 147 Conn. App. 307, 315–16,     A.3d     (2013). For these reasons, we conclude that Conway's tactical decision not to raise a *Barker* claim in his motion to dismiss fell within the wide range of reasonable professional assistance and did not amount to ineffective assistance of counsel.

B

The petitioner next claims that Ahern, his criminal trial counsel, should have raised a *Barker* claim after he replaced Conway. The habeas court concluded that "it was reasonable for [Ahern] not to file a second motion to dismiss under *Barker* v. *Wingo* [supra, 407 U.S. 514] days before the trial was set to begin, particularly since prior counsel had attended to the pretrial matters and he was retained to handle the trial of the case."

Ahern testified that he filed his appearance immediately before the trial commenced, and after the pretrial matters had concluded. Ahern had discussed the petitioner's case with Conway and had received his file. Ahern also stated that he had seen the transcript of the hearing on Conway's motion to dismiss. Ahern "felt that [the speedy trial issue] had been presented. A judge had ruled on it, and now it was time to try the case."

We agree with the habeas court that the petitioner has failed to meet his burden of proving that Ahern was ineffective for failing to raise the *Barker* issue. "An attorney can avoid activities that appear distractive from more important duties. . . . Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." (Citation omitted; internal quotation marks omitted.) *Harrington* v. *Richter*,     U.S.    , 131 S. Ct. 770, 789, 178 L. Ed. 2d 624 (2011). Ahern's decision to focus on the pending trial and not to revisit the issue of the *Barker* claim constituted reasonable strategy and, thus, did not amount to ineffective assistance.

C

The petitioner next claims that Inkster provided ineffective assistance of counsel during his direct appeal. Specifically, he argues that Inkster took no action to present an adequate record regarding a *Barker* claim to our Supreme Court. We disagree.

"A criminal defendant's right to the effective assistance of counsel extends through the first appeal of right and is guaranteed by the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution. . . .

To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* . . . ." (Citation omitted; internal quotation marks omitted.) *Synakorn* v. *Commissioner of Correction*, 124 Conn. App. 768, 771–72, 6 A.3d 819 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1004 (2011). "Our Supreme Court has distinguished the standards of review for claims of ineffective assistance of trial counsel and of appellate counsel. . . . For claims of ineffective assistance of appellate counsel, we must assess whether there is a reasonable probability that, but for appellate counsel's failure to raise the issue on appeal, the petitioner would have prevailed [on] appeal, i.e., [obtaining] reversal of his conviction or granting of a new trial." (Citation omitted; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 131 Conn. App. 805, 808, 29 A.3d 166 (2011); *Moody* v. *Commissioner of Correction*, 127 Conn. App. 293, 300–301, 14 A.3d 408, cert. denied, 300 Conn. 943, 17 A.3d 478 (2011).

Inkster testified that she reviewed the transcripts of the petitioner's criminal trial, identified the possible legal issues, conducted research, and selected two issues to pursue on his direct appeal to our Supreme Court. She specifically considered making a *Barker* claim, but decided against it because of the lack of prejudice. See footnote 2 of this opinion. She expressly testified that she did not make such an argument because she felt it lacked a chance of success on appeal and instead focused on other issues.

"Just as with a claim of ineffective assistance of trial counsel, success on a claim of ineffective assistance of appellate counsel requires the petitioner to establish that appellate counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . [Although] an appellate advocate must provide effective assistance, [she] is not under an obligation to raise every conceivable issue. A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions. . . . Indeed, [e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. . . . Moreover, [a] habeas court will not, with the benefit of hindsight, second-guess the tactical decisions of appellate counsel." (Citation omitted; internal quotation marks omitted.) *Saucier* v. *Commission of Correction*, 139 Conn. App. 644, 651–52, 57 A.3d 399 (2012), cert. denied, 308 Conn. 907, 61 A.3d 530 (2013); *Johnson* v. *Commissioner of Correction*, supra, 131 Conn. App. 809; see also *Synakorn* v. *Commissioner of Correction*, supra, 124 Conn. App. 775 ("Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion

that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at a lack of confidence in any one [issue] . . . . [M]ultiplying assignments of error will dilute and weaken a good case and will not save a bad one." [Internal quotation marks omitted.]).

We agree fully with the habeas court that "the petitioner has failed to prove that . . . Inkster's representation fell below the objective standard of reasonableness. Inkster did precisely what the law requires of her. She reviewed the pleadings and transcripts, identified the possible issues and then strategically determined which issues had the best chance of winning." Accordingly, we conclude that the habeas court properly determined that Inkster provided the petitioner with effective assistance of counsel.

II

We next address the petitioner's additional claims of ineffective assistance of counsel as to Ahern. Specifically, he argues that Ahern failed to present evidence regarding muriatic acid and advised the petitioner not to testify. We disagree.

A

The petitioner argues that Ahern provided ineffective assistance of counsel by failing to present evidence regarding muriatic acid and its ability, or lack thereof, to dissolve human body parts. At the habeas trial, the parties stipulated that muriatic acid, even in large quantities, will not dissolve a body.[4] The habeas court determined that Ahern made an objectively reasonable strategic decision not to present evidence regarding the properties of muriatic acid because of his belief that it had no value to the petitioner's defense. The court further reasoned that had such evidence been presented to the jury, it would not have made any difference in the outcome. Accordingly, the court concluded that the petitioner had failed to carry his burden with respect to both *Strickland* prongs.

We consider the following additional facts in addressing this claim. During the petitioner's criminal trial, the jury heard recorded statements that Estrella made to his cellmate in prison that the petitioner had suggested that they use acid to dispose of the victim's body. Estrella was also heard saying that the petitioner went to The Home Depot to purchase acid for this purpose. During the habeas trial, Ahern testified that the state was unable to produce evidence that forensically linked the petitioner to the death of the victim. Ahern also explained that conviction of the petitioner was based exclusively on testimony of codefendants.

In rejecting this claim, the habeas court stated: "The victim's body was never located in this case. Witnesses testified about the petitioner's role in the murder of the victim, and such evidence was sufficient for the jury

to find him guilty of the charges. The issue of how the victim's body was secreted after the murder was not a central issue in the case. The evidence of the murder and elimination of the body came from eyewitnesses, not forensic proof. Codefendant Estrella, who raised the issue of the petitioner's statement regarding the acid, was not present when the victim's dead body was later concealed by the petitioner and another. The petitioner during his testimony in this case admitted that he agreed to get rid of the body in exchange for drugs and did so, with another person, by dragging the body into a wooded area and throwing it in a watery ditch. He later told Estrella that he dissolved the body in acid, but that is not what actually happened."

At the outset, we note that "[i]n its analysis, a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a habeas petition." (Internal quotation marks omitted.) *Davis* v. *Commissioner of Correction*, 147 Conn. App. 343, 349,      A.3d (2013). "To establish prejudice, a [petitioner] must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . [I]n a habeas corpus proceeding, the petitioner's burden of proving that a fundamental unfairness had been done is not met by speculation . . . *but by demonstrable realities*." (Emphasis in original; internal quotation marks omitted.) Id. We agree that the manner in which the victim's body was disposed of constituted a collateral issue that would not have affected the verdict. Accordingly, we conclude that the habeas court properly determined that the petitioner failed to establish prejudice with respect to this claim.[5]

### B

The petitioner argues that Ahern provided ineffective assistance by advising him not to testify during the criminal trial. He argues that because the state's case lacked physical or forensic evidence linking the petitioner to the death of the victim and was based exclusively on the statements of convicted felons, Ahern should not have advised and persuaded him not to testify during the criminal trial.

The habeas court found the following facts relating to this claim. "Ahern had ongoing discussions with the petitioner as to whether or not he should testify in this case. The petitioner did not have a strong view on whether he should or should not testify. Although Ahern advised the petitioner that he had the right to testify, he strongly advised him not to do so. Ahern explained to the petitioner that the state had a strong case, but there were holes in its case. If the petitioner chose to testify, and testified poorly as Ahern believed he would, the petitioner could seriously hurt his case. As a convicted felon, the state could use the petitioner's convic-

tion record on cross-examination. More importantly, Ahern did not believe that the petitioner had a cohesive and consistent story to tell the jury.

"In addition, the [criminal] court thoroughly canvassed the petitioner on the record on his decision not to testify. In particular, the trial court explained to the petitioner that he had the right to testify in his case or not testify in this case. It expressly asked him whether it was his choice not to testify. The petitioner indicated that he understood his right and elected not to testify. He also indicated during the canvass that he had discussed the issue with Ahern. . . .

"The court finds that Ahern provided objectively reasonable advice regarding the petitioner's decision to testify or not testify. He appropriately reviewed the state's evidence with the petitioner and reviewed with him the substance of what the petitioner would say if he took the [witness] stand. Based on this, Ahern strongly advised the petitioner not to testify. Having heard the petitioner's version of events during the trial of this case, this court cannot disagree with Ahern's judgment that the petitioner's story was inconsistent and contained damaging and incriminatory details that would not have assisted his defense that he was a minor player in the events of the murder and its aftermath. In addition, the decision whether or not to testify was the petitioner's, and it is clear from the [criminal] court's canvass, that the petitioner knowingly and voluntarily elected not to testify. Accordingly, the court finds that the petitioner has failed to prove that Ahern's advice as to whether the petitioner should or should not testify was in any way deficient."

The criminal defendant's right to testify on his own behalf, after consultation with counsel, is well established. "[A]lthough the due process clause of the [f]ifth [a]mendment may be understood to grant the accused the right to testify, the if and when of whether the accused will testify is primarily a matter of trial strategy to be decided between the defendant and his attorney." (Internal quotation marks omitted.) *Coward* v. *Commissioner of Correction*, supra, 143 Conn. App. 799; see also *Wideman* v. *Commissioner of Correction*, 67 Conn. App. 739, 740, 789 A.2d 1097, cert. denied, 260 Conn. 906, 795 A.2d 547 (2002).

The habeas court properly determined that the petitioner had failed to sustain his burden of overcoming the strong presumption that Ahern provided effective assistance of counsel. "[J]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance

requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . [T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment. . . . It is well established that [a] reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance and that a tactic that appears ineffective in hindsight may have been sound trial strategy at the time." (Internal quotation marks omitted.) *Coward* v. *Commissioner of Correction*, supra, 143 Conn. App. 800–801.

We agree with the reasoned decision of the habeas court that Ahern's advice constituted sound trial strategy and, therefore, did not constitute ineffective assistance of counsel. See, e.g., *Toccaline* v. *Commissioner of Correction*, 80 Conn. App. 792, 815, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413, cert. denied sub nom. *Toccaline* v. *Lantz*, 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004). Accordingly, we conclude that this claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The habeas court found that Ahern "did not properly advise the petitioner as to his right to sentence review after either the March sentencing or the May 17 correction hearing." It further found that the petitioner suffered prejudice by this "absence of access to sentence review" and restored his right to sentence review under General Statutes § 51-195. The issue of sentence review is not before this court on appeal.

[2] "The sixth amendment guarantee of a speedy trial is a fundamental right made applicable to the states through the fourteenth amendment to the United States constitution. . . . In *Barker* v. *Wingo*, [supra], 407 U.S. 514 . . . the United States Supreme Court articulated a balancing test for determining when a defendant's constitutional right to a speedy trial has been violated. . . . The Supreme Court of the United States and [the Connecticut Supreme Court] have identified four factors which form the matrix of the defendant's constitutional right to speedy adjudication: [l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. . . . A balancing test is to be applied on a case by case basis. None of the factors standing alone demands a set disposition; rather it is the total mix which determines whether the defendant's right was violated." (Citation omitted; internal quotation marks omitted.) *State* v. *Gaston*, 86 Conn. App. 218, 226, 860 A.2d 1253 (2004), cert. denied, 273 Conn. 901, 867 A.2d 840 (2005); see also *State* v. *Lacks*, 58 Conn. App. 412, 417, 755 A.2d 254, cert. denied, 254 Conn. 919, 759 A.2d 1026 (2000).

[3] Conway noted that the state cited General Statutes § 54-56b and Practice Book § 39-30 as the provisions in support of its use of a nolle prosequi.

[4] Specifically, the parties stipulated that "[m]uriatic acid, even in very large quantities, will not completely dissolve a human body or human body parts. . . . Muriatic acid as sold at [The] Home Depot and as possessed by [the petitioner] will not, even in very large quantities, completely dissolve a human body or human body parts. . . . Muriatic acid is commonly used to clean concrete, brick and swimming pools."

[5] We also agree with the habeas court that Ahern's tactical decision not to introduce any evidence of muriatic acid did not constitute deficient performance in this case.