******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TERRELL STATON *v.* COMMISSIONER
OF CORRECTION
(AC 34267)

DiPentima, C. J., and Alvord and Bear, Js.

*Argued January 7—officially released February 25, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Cobb, J.)

*Deren Manasevit*, assigned counsel, for the appellant (petitioner).

*Nancy L. Chupak*, senior assistant state's attorney,
with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Angela R. Macchiarulo*, senior
assistant state's attorney, for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Terrell Staton, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court abused its discretion in denying his petition for certification to appeal, and that the court improperly denied his claim of ineffective assistance of trial counsel. We dismiss the petitioner's appeal.

The record reveals the following relevant facts and procedural history. On June 26, 2006, Danbury police Officer Michael Pederson noticed a red Dodge Neon (vehicle) with a license plate that appeared to be a "little ragged" and did not look like it "fit" the vehicle. As he was watching the vehicle, he observed it making a right turn through a stop sign without coming to a complete stop. Pederson activated his emergency lights and, when the vehicle did not stop, he also activated his siren and contacted police dispatch. The vehicle began to drift into oncoming traffic, and the driver of the vehicle jumped out, stumbled, and then proceeded to run down an "alleyway" while the vehicle was still in motion. The unoccupied vehicle collided head-on with an oncoming car.

Pederson followed the driver and observed him running up a driveway alongside 40 Williams Street (building) before losing sight of him. Behind the building was a completely enclosed parking lot with a four to five foot high fence. Pederson waited for other police officers to arrive, including the state police canine unit. The responding canine unit officer, Jason Cassavechia, and his police dog, Dakota, proceeded to the abandoned vehicle so that Dakota could identify the scent of the driver. Dakota then tracked the scent to the parking lot behind the building where Pederson had last seen the driver. After conducting a search of the nearby area, Pederson, Cassavechia, and Dakota returned to the parking lot, whereupon Dakota resumed tracking along the fence line before barking at the petitioner, who was discovered in the bushes at the edge of the parking lot. The petitioner was subdued and placed under arrest.

At trial, the petitioner pleaded not guilty and claimed that it was his friend, Warren Battle, who was the driver of the vehicle, and that the petitioner had been in the parking lot because he was searching for Battle and the vehicle following a telephone call he received from Battle. At the conclusion of the bench trial, the petitioner was convicted of reckless endangerment in the second degree in violation of General Statutes § 53a-64, interfering with a police officer in violation of General Statutes § 53a-167a, operating an unregistered vehicle in violation of General Statutes § 14-12 (a), improper use of a marker in violation of General Statutes § 14-

147 (c), and failing to obey a traffic signal in violation of General Statutes § 14-301. The petitioner did not file a direct appeal, but instead filed a petition and, thereafter, an amended petition for a writ of habeas corpus.

In his amended petition for a writ of habeas corpus, the petitioner claims that his trial counsel, Jennifer Tunnard, provided ineffective assistance by failing to call Battle as a witness who, the petitioner contends, would have testified as to the petitioner's innocence, and by failing to obtain a capias for Battle.[1] The habeas court denied the petition in a January 9, 2012 oral decision. The court concluded that the petitioner failed to meet either of the two prongs required to establish ineffective assistance of counsel under *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and denied his petition for certification to appeal. This appeal followed.

"The standard of review and the hurdles a petitioner must overcome to obtain appellate review of a habeas court's denial of a petition for a writ of habeas corpus after certification to appeal has been denied are well known. . . . This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion [a reviewing court] necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Internal quotation marks omitted.) *Linarte* v. *Commissioner of Correction*, 147 Conn. App. 500, 503,    A.3d    (2014).

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Alcena* v. *Commissioner of Correction*, 146 Conn. App. 370, 372, 76 A.3d 742 (2013). "To prevail on a claim of ineffective assistance of counsel, a habeas petitioner generally must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. See *Strickland* v. *Washington*, [supra, 466 U.S. 687] . . . . To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by

lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . *The claim will succeed only if both prongs are satisfied.*" (Citation omitted; emphasis in original; internal quotation marks omitted.) *Varchetta* v. *Commissioner of Correction*, 146 Conn. App. 744, 749, 80 A.3d 591 (2013).

The record reveals the following additional facts that are relevant to our discussion. The petitioner told Tunnard it was not he, but rather Battle who had been the driver of the vehicle on June 26, 2006. As part of her investigation, Tunnard sent Thomas Murphy, an investigator, to interview Battle at Bridgeport Correctional Center on February 12, 2008, where he was being held on an unrelated matter. Battle admitted that he was the operator of the vehicle, but informed the investigator that "he suffers from memory loss and has trouble recalling details." Battle declined to give Murphy a written statement, "as he believe[d] he would be arrested for this incident." On September 24, 2008, the day before the bench trial, investigators for the state, John Mahoney and Donald Brown, spoke with Battle at a private residence in Danbury. Battle stated that he remembered the incident of June 26, 2006, but that he was not there; he was not the driver of the vehicle nor was he in the vehicle. He also told the investigators that "he was using drugs at the time, and couldn't remember much." Battle refused to discuss the incident with the investigators further and stated that he wanted to speak to an attorney. Battle appeared before the court as a subpoenaed witness during the bench trial on September 25, 2008, and stated that he wanted to have an attorney present before being called as a witness by the petitioner. Following a brief colloquy, the court instructed Battle to call his attorney. Battle never returned to the courtroom, and, following a recess to attempt to track him down, Tunnard rested the petitioner's case. In rendering its decision, the trial court expressly found that Pederson gave credible testimony that it was the petitioner who was the driver of the vehicle.

On appeal, the petitioner asserts that the habeas court's decisions denying certification to appeal and on the merits should be reversed because "[a] reasonable attorney in Tunnard's position would not have foregone Battle's exculpating testimony just because Battle failed to show up in court," and her failure to call Battle as a witness fell below an objective standard of reasonableness. The petitioner also argues that "Battle's testimony would have raised reasonable doubt [as to] whether the petitioner was the driver of the [vehicle] . . . ." The petitioner posits that "[i]f the trial court had been aware that a third party had admitted to being the driver of the [vehicle], there is more than a reasonable probability that the court would have harbored

reasonable doubt that the petitioner was guilty, and there is more than a reasonable probability that the court would have found the petitioner not guilty." Consequently, the petitioner argues that he was prejudiced by Tunnard's ineffective assistance in failing to call Battle as a witness.

There was substantial evidence supporting the habeas court's conclusion that the petitioner failed to establish the prejudice prong for ineffective assistance of counsel. The habeas court heard Battle's testimony, which Battle claimed was consistent with how he would have testified at the petitioner's criminal trial. This testimony contained contradictions, and Battle repeatedly asserted that he could not recall the events of June 26, 2006.[2] The habeas court also had the opportunity to hear testimony from Pederson, as well as Tunnard and the petitioner, before concluding that "the petitioner has not shown that there [is] a reasonable probability that the outcome . . . of the proceedings would have been different in view of [Pederson's] testimony identifying the petitioner as the person who left the scene of the crime, who he saw personally, and then chased through the neighborhood and ultimately arrested." It was entirely within the habeas court's purview so to conclude. "The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses . . . ." (Citation omitted; internal quotation marks omitted.) *Maldonado* v. *Commissioner of Correction*, 141 Conn. App. 455, 464–65, 62 A.3d 528, cert. denied, 308 Conn. 941, 66 A.3d 883 (2013).

We conclude that the habeas court did not err in determining that the petitioner failed to meet his burden of showing that he suffered actual prejudice as a result of Tunnard's failure to call Battle as a witness or to obtain a capias.[3] Accordingly, the petitioner's ineffective assistance of counsel claim must fail, and the habeas court did not abuse its discretion in denying the petition for certification to appeal from the judgment denying his amended petition for a writ of habeas corpus. This is not a case in which the issues are debatable among jurists of reason, a court could resolve the issues in a different manner, or the issues raised by the petitioner are adequate to cause this court to proceed to consider them.

The appeal is dismissed.

[1] The petitioner also claimed that Tunnard provided ineffective assistance by failing to cross-examine witnesses properly. No evidence, however, was offered on this claim, therefore the habeas court found in favor of the respondent, the Commissioner of Correction, on the claim. This finding has not been challenged on appeal.

[2] "[The Petitioner's Counsel]: Okay. Do you recall the night of June 26, 2006?

"[Battle]: Somewhat. I don't really—no, not really, no.

\* \* \*

"[The Petitioner's Counsel]: You remember borrowing a car from [the petitioner]?

"[Battle]: Yes.

"[The Petitioner's Counsel]: Okay. Did you return the car to [the petitioner]?

"[Battle]: No.

"[The Petitioner's Counsel]: Okay. Who did you return the car to?

"[Battle]: I never returned the car.

"[The Petitioner's Counsel]: Okay. Do you know what happened to the car?

"[Battle]: No.

"[The Petitioner's Counsel]: Okay. Did you leave it somewhere?

"[Battle]: No.

\* \* \*

"[The Petitioner's Counsel]: Do you know if it was at nighttime?

"[Battle]: No. I don't recall too much of the situation. It was awhile ago.

"[The Petitioner's Counsel]: Okay. And you don't know what happened to the car?

"[Battle]: No.

"[The Petitioner's Counsel]: And do you know—you left the car there. Correct?

"[Battle]: Ri—

"[The Petitioner's Counsel]: Do you know where you left it?

"[Battle]: No.

"[The Petitioner's Counsel]: Okay. You left it somewhere?

"[Battle]: Yeah.

\* \* \*

"[The Respondent's Counsel]: Okay. You just left the car?

"[Battle]: Right.

"[The Respondent's Counsel]: Okay. And you left it, and you walked away?

"[Battle]: No. I don't—I don't really recall the situation. Ma'am, my memory is like totally—if I can answer straight up, I would.

"[The Respondent's Counsel]: Do you recall—call[ing] [the petitioner] at all and say[ing], hey, dude, I left your car. Here's where it is. Go get it.

"[Battle]: I don't remember.

"[The Respondent's Counsel]: You don't?

"[Battle]: No."

[3] As we have determined that the petitioner has failed to show that he was prejudiced, we need not analyze whether trial counsel's representation was deficient.

————————————————————