******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICKEY MINOR *v.* COMMISSIONER
OF CORRECTION
(AC 34651)

DiPentima, C. J., and Keller and West, Js.

*Argued February 3—officially released June 10, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Newson, J.)

*Albert J. Oneto IV*, assigned counsel, for the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney,
with whom, on the brief, were *Maureen Platt*, state's
attorney, and *Eva B. Lenczewski*, supervisory assistant
state's attorney, for the appellee (respondent).

*Opinion*

DiPENTIMA, C. J. The petitioner, Mickey Minor, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the habeas court (1) abused its discretion in denying certification to appeal and (2) improperly denied his claim that his criminal trial counsel provided ineffective assistance in failing to consult with, or to present the testimony of, an expert in the field of forensic child psychology. We disagree, and, accordingly, dismiss the appeal.

After a jury trial, the petitioner was convicted of sexual assault in the first degree in violation of General Statutes (Rev. to 1999) § 53a-70 (a) (2) and two counts of risk of injury to a child in violation of General Statutes § 53-21 (2). This court affirmed the judgment of conviction on direct appeal and determined that the jury reasonably could have found the following relevant facts. See *State* v. *Minor*, 80 Conn. App. 87, 89, 832 A.2d 697, cert. denied, 267 Conn. 907, 840 A.2d 1172 (2003). The petitioner arranged to stay temporarily with the victim's mother at her home. Id., 89–90. It was during this stay, in January, 2000, that the crimes occurred. Id. One assault occurred when the victim, who was seven years old at the time, went to sleep in her mother's bed, where her mother, brother, and the petitioner were sleeping. Id., 90. The other assault happened during an indoor game of hide-and-seek. Id. Following these assaults, the petitioner ended his stay and left the victim's home. Id. Approximately six months later, the victim disclosed the assaults to her mother. Id. The victim and her mother then reported the assaults to the police. Id. The petitioner eventually was convicted and sentenced. Id., 94.

Our review of the criminal trial proceedings reveals the following. During the criminal trial, several inconsistencies surfaced in the victim's story as told to the victim's mother and to a clinical psychologist, Elizabeth Donahue, and through the victim's own trial testimony. In particular, there were discrepancies about the sequence of events: whether the assault in the mother's bed happened before or after the hide-and-seek assault, and whether the assaults happened on consecutive or nonconsecutive days. There was also conflicting testimony about specific details of the assaults, circumstances surrounding the actual disclosure, and the nature of the victim's relationship with the petitioner. Principally to explain the inconsistencies in the victim's story and her failure to disclose the abuse earlier, the state offered the testimony of two experts in the field of clinical psychology. One of the experts, Donahue, conducted an interview with the victim shortly after the abuse was reported. The other expert, Sidney Horowitz, neither treated nor interviewed the victim.

Donahue testified that children will often delay disclosure—and sometimes never make a disclosure—for a number of reasons, including fear of getting into trouble. She further testified on cross-examination that with respect to the sequence of the assaults, she would expect a child's report to be reliable. When asked on redirect examination to clarify her response, she testified: "It's easier for a child to tell you what happened on Saturday and perhaps have it in some sort of correct order than to tell you which Saturday it was that it happened in time." When asked about a child's ability to tell "details about what happened first, what happened second," she testified: "Again, it's what relevance it's had to that child, how they've made sense of it in their head, how many times they've told the story. It's hard to tell."

Regarding her clinical interviewing techniques, Donahue testified that her standard method of interviewing was to allow a child to give a narrative first and then to follow up with more specific questions to fill in details. She also testified that during her interviews she would look for signs of a child "parroting somebody else's words." When asked if she saw such signs during her interview with the victim, she testified: "The information that [the victim] gave me was given to me in the language of a seven or eight year old child . . . ."

Like Donahue, Horowitz offered testimony about a child's delayed disclosure and "sequential processing" of abuse. Essentially, Horowitz testified that it would be the exception, not the rule, for a seven year old child to report abuse immediately, unless the abuse was done by an absolute stranger and associated with significant physical trauma. Moreover, he testified that the "sequential processing" of an adult is more developed than that of a child, so whereas an adult might place events in a precise order, a child might look more at the "big picture." When asked, hypothetically, if a seven year old child might be inconsistent in sequencing two events, Horowitz testified that such behavior would be consistent with his understanding of a child's sequencing process. Defense counsel did not cross-examine Horowitz.

Turning to the proceedings underlying this appeal, the petitioner filed an amended petition for a writ of habeas corpus claiming, among other things, that his criminal trial counsel, David Channing, had provided ineffective assistance in failing (1) to "adequately cross-examine, impeach, and otherwise challenge" the testimony of the victim, the victim's mother, Donahue, Horowitz, and a police detective, and (2) to "present the testimony of an expert with an expertise in investigating and assessing child sexual abuse allegations." After reviewing the criminal trial transcripts and considering the testimony at the habeas trial of Channing, Donahue,

Horowitz, and an additional clinical psychologist, David Mantell, the habeas court denied the amended petition. The court found that Channing's performance was not deficient and that the petitioner failed to prove that he had been prejudiced. The court then denied the petition for certification to appeal. This appeal followed.

The standard of review and relevant legal principles are well known. "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . If this burden is not satisfied, then the claim that the judgment of the habeas court should be reversed does not qualify for consideration by this court." (Internal quotation marks omitted.) *Perillo* v. *Commissioner of Correction*, 149 Conn. App. 58, 60–61,    A.3d    (2014).

"The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the federal constitution, and by article first, § 8, of the constitution of Connecticut. In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . .

"With respect to the performance component of the *Strickland* test, [t]o prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. . . . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . .

"With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that

counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 148 Conn. App. 517, 523–25, 85 A.3d 1199 (2014).

"We employ plenary review in examining the legal conclusions of the habeas court, and we consider whether those conclusions are legally and logically correct and supported by the factual record. . . . This court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous. . . . Further, the habeas judge is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Citations omitted; internal quotation marks omitted.) Id., 522–23.

Rather than decide if Channing's performance was deficient under *Strickland*, we consider whether the petitioner suffered prejudice as a result of Channing's performance. See *Fernandez* v. *Commissioner of Correction*, 291 Conn. 830, 835, 970 A.2d 721 (2009) (court can find against petitioner on either performance or prejudice prong); *Staton* v. *Commissioner of Correction*, 148 Conn. App. 427, 434 n.3, 84 A.3d 947 (2014) (when petitioner fails to satisfy prejudice prong, there is no need to evaluate claim under performance prong). A court ruling on prejudice "must consider the totality of the evidence before the judge or the jury. . . . Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. . . . The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 688–89, 51 A.3d 948 (2012).

At the habeas trial, the petitioner presented testimony from Donahue, Horowitz, and Mantell. Donahue testified that at the time of her interview with the victim,

she knew that children could be coached to fabricate sexual abuse allegations. She further testified that it was not her duty to consider, investigate or rule out alternate explanations for the victim's abuse allegations, for example whether the victim was fabricating or being told to fabricate. According to her, that duty lay with the Department of Children and Families and the police.

Similarly, Horowitz testified that there was an understanding in the field of psychology, around the time of Donahue's interview with the victim, that a child could be coached to make false sexual abuse allegations. Additionally, Horowitz testified that a forensic interviewer at that time had a duty to consider alternate explanations for abuse allegations. Horowitz further testified that inconsistencies by a seven year old child with respect to the sequence of events possibly would be consistent with fabrication. Finally, Horowitz testified that there are many circumstances and factors influencing a child's disclosure of sexual abuse, including whether the abuser lives in the child's home.

Mantell also testified that Donahue had a duty to conduct a complete and unbiased investigation into the sexual abuse allegations. According to Mantell, a complete investigation would have considered alternate explanations for the abuse allegations, including whether the victim's mother coached the victim to fabricate.[1] When later asked if Donahue conducted an unbiased interview, Mantell testified: "I think it was a confirmatory interview. She set out to gather—the way she states it, she set out to get detail[s] about the allegation that she was informed about before she started the interview. So that means she had an agenda and that agenda, I think, indicates a bias." Mantell further testified that upon discovering, among other things, that the victim and the petitioner had communicated after the events, the victim should have been reinterviewed to explore motives to fabricate. On cross-examination, however, Mantell testified that upon reviewing the evidence presented at the criminal trial, he did not find any definitive evidence indicating that the victim had been coached. Finally, challenging Horowitz' criminal trial testimony regarding delayed disclosures, Mantell testified that the particular circumstances of this case would be more closely associated with a prompt disclosure rather than a delayed disclosure.[2]

The habeas court credited the testimony of Donahue, Horowitz, and Mantell, but observed that all three experts were not "overly definitive" and offered somewhat different testimony about whether a forensic interviewer at the time of Donahue's interview had a clear duty to investigate, consider or rule out alternate explanations for abuse allegations. Weighing all the testimony, the court found that all three experts agreed that the scope of that duty varied according to the

circumstances of an individual forensic interview.

On appeal, the petitioner claims that Channing provided ineffective assistance in failing to consult with, or to present the testimony of, an expert in the field of forensic child psychology.[3] Relying primarily on *Gersten* v. *Senkowski*, 426 F.3d 588 (2nd Cir. 2005), cert. denied sub nom. *Artus* v. *Gersten*, 547 U.S. 1191, 126 S. Ct. 2882, 165 L. Ed. 2d 894 (2006), the petitioner argues that had the jury been presented with the testimony elicited at the habeas trial, it would have discredited the victim's testimony, and the result of the proceeding would have been different. In support of his overarching argument, he points to weaknesses in the state's case: no physical evidence of sexual assault, no other witnesses to the sexual assault, and inconsistencies in the victim's story. The state's case, he continues, rested on the victim's testimony and Donahue's and Horowitz' explanation for the victim's delayed disclosure and the inconsistencies in her story. He thus concludes that it was essential to rebut the testimony of Donahue and Horowitz, which in turn, required Channing either to present the testimony of a defense expert or to consult with a defense expert in order to conduct an informed cross-examination. We are not persuaded.

In denying this claim, the habeas court concluded that the petitioner failed to meet his burden of proving prejudice under *Strickland*. The court found that the testimony of the three experts was "not [nearly as] polarizing" as claimed by the petitioner and thus insufficient to establish prejudice. The court reasoned that the jury's verdict rested mainly on the victim's credibility: "[E]ven with the inconsistencies and the inability to remember, and at times remembering events [that] happened before they happened or after they happened, the jury believed ultimately that the victim was telling the truth." Accordingly, the court concluded that the omitted testimony of the three experts would not have changed the jury's assessment of the victim's credibility sufficiently to establish prejudice. We agree.

The record in this case supports the habeas court's determination that the petitioner failed to prove with reasonable probability that the testimony elicited at the habeas trial would have resulted in a different outcome. As the court found, Mantell's testimony was not as compelling as the petitioner maintains. See., e.g., *Thomas* v. *Commissioner of Correction*, 141 Conn. App. 465, 472, 62 A.3d 534 ("[t]he failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense" [internal quotation marks omitted]), cert. denied, 308 Conn. 939, 66 A.3d 881 (2013). Mantell never testified that Donahue or Horowitz reached incorrect conclusions. Although he testified that Donahue conducted an incomplete and

biased interview, he did not testify that a complete and unbiased interview would have resulted, with reasonable probability, in a different conclusion regarding the victim's credibility. In fact, Mantell conceded on cross-examination that he could not find any definitive evidence pointing to fabrication by the victim.

Additionally, Mantell testified that the circumstances of this case would be more closely associated with a prompt disclosure than a delayed disclosure. At first glance, that testimony appears to be at odds with Horowitz' criminal trial testimony, which was that it would be the exception for a child in the victim's circumstances to report abuse immediately. Mantell later qualified his conclusion: "There's no agreement within the literature as to what timeliness versus delay means. And researchers use different time periods to designate a delay. For some, it's anything more than a month; for others, it's after three months; or still others, it's after six months; or still others, it's a delay of more than a year." On the basis of that testimony, the victim's disclosure six months after the assaults would appear to fall within the imprecise range of timeliness and delay. Accordingly, Mantell's testimony about disclosure would not have contradicted Horowitz' testimony entirely.

It is true that the jury never heard Donahue specifically testify that it was not her duty to consider, investigate or rule out alternate explanations. Through Donahue's criminal trial testimony, however, the jury was presented with information on the general topic of fabrication. On redirect examination, for example, Donahue was asked if during her interview she saw signs of the victim "parroting somebody else's words." She testified that the victim recounted her story in the language of a seven or eight year old child. So, although Donahue's interviewing methods were not explored fully, the jury was presented with sufficient information to make it aware of the potential for fabrication during Donahue's interview with the victim.

Finally, contrary to the petitioner's assertions, this case is distinguishable from *Gersten* v. *Senkowski*, supra, 426 F.3d 588, a child sexual abuse case in which the United States Court of Appeals for the Second Circuit found that defense counsel provided ineffective assistance. Id., 615. Under the particular circumstances of that case, the interpretation of indirect physical evidence of sexual abuse by a medical expert was fundamental to the prosecution's case at the criminal trial. The prosecution presented an expert who testified that his medical examination of the child revealed indirect physical evidence indicative of sexual penetration. Id., 594–95. The Second Circuit characterized that testimony as "the most extensive corroboration that any crime occurred." Id., 608. Unlike the medical expert testimony in *Gersten*, the expert testimony at the peti-

tioner's criminal trial was not fundamental to the state's case. Instead, the state's case focused primarily on the victim's testimony. Nor was the testimony of Donahue or Horowitz as corroborative as the expert testimony in *Gersten*.

In its ruling on prejudice, the Second Circuit considered the harm resulting from defense counsel's failure to present a medical expert together with the harm from defense counsel's failure to present a psychological expert. Id., 611–12. In other words, it combined both deficiencies in its assessment of prejudice. As stated previously, the medical expert testimony was of primary focus at the criminal trial, and thus, presumably the omitted medical testimony offered at the habeas trial had a greater effect than the omitted psychological testimony. Id., 612. Because of the approach to prejudice taken by the Second Circuit, it is unclear whether the omitted psychological testimony in *Gersten*, standing alone, would have prejudiced the petitioner. *Gersten* is distinguishable on other grounds as well. There, defense counsel presented a psychological expert at the habeas trial who testified that the prosecution's expert's theories at the criminal trial "lacked any scientific validity." Id., 611. In the present case, as the habeas court properly determined, the psychological expert testimony was not as definitive.

We therefore agree with the habeas court that the petitioner failed to demonstrate with reasonable probability that the testimony of a defense expert, or a more forceful and comprehensive cross-examination of Donahue or Horowitz, would have resulted in a different outcome. As the habeas court correctly found, the case rested largely on the victim's credibility, and ultimately, the jury credited the victim's testimony despite defense counsel's emphasizing the inconsistencies in her story.

We conclude that the petitioner has failed to establish that the issues he has raised are debatable among jurists of reason, that a court could have resolved them in a different manner or that the questions he has raised are adequate to deserve encouragement to proceed further. Accordingly, the habeas court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] We note that there was substantial evidence to refute the alternate theory of defense that the victim's mother coached the victim to fabricate. The mother, for example, did not report the abuse to the authorities immediately after the victim disclosed it. Instead, she informed the victim of the severity of the allegations and asked her on several occasions to consider if she truly did wish to come forward with the allegations.

[2] In support of his conclusion, Mantell pointed to the fact that the petitioner "was not a complete stranger," "was known to the family," had been in the home for a very short period of time and then left, and had not made "great" threats of violence to the victim.

[3] In his appellate brief, the petitioner raises several additional alleged deficiencies, including Channing's failure to read or request a copy of the police report, failure to timely receive Department of Children and Families'

records, and failure to conduct an adequate pretrial investigation into the timing of the assaults. These alleged deficiencies were not raised before the habeas court and were not asserted in the petitioner's amended petition for a writ of habeas corpus or his petition for certification to appeal. We thus do not consider them on appeal. See, e.g., *Henderson* v. *Commissioner of Correction*, 129 Conn. App. 188, 198, 19 A.3d 705 ("A reviewing court will not consider claims not raised in the habeas petition or decided by the habeas court. . . . Appellate review of claims not raised before the habeas court would amount to an ambuscade of the [habeas] judge." [Citations omitted; internal quotation marks omitted.]), cert. denied, 303 Conn. 901, 31 A.3d 1177 (2011).

---