******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JARED CHARLES *v.* COMMISSIONER
OF CORRECTION
(AC 43643)

Elgo, Alexander and DiPentima, Js.

*Syllabus*

The petitioner, who had been convicted of various crimes in connection
with the shooting death of the victim, sought a writ of habeas corpus,
claiming ineffective assistance of his trial counsel, H. He claimed that
H failed to investigate the viability of self-defense as a defense strategy
and that he was ineffective for failing to assert a claim of self-defense
at trial. The habeas court denied each of the petitioner's claims of
ineffective assistance, and the petitioner appealed to this court claiming
that the habeas court improperly concluded that he failed to prove his
claims. *Held*:

1. The petitioner could not prevail on his claim of ineffective assistance of
counsel, the habeas court properly having determined that he failed to
demonstrate that it was objectively unreasonable for his trial counsel
to pursue a defense of third-party culpability instead of self-defense:
after examining all of the evidence, H determined that a theory of third-
party culpability was the strongest defense, concluded that the facts in
the petitioner's signed statement were not consistent with self-defense,
and testified at the habeas trial that he could not recall whether or not
the petitioner had informed him that he had possessed a gun during the
altercation with the victim, and the habeas court had the sole ability to
determine the credibility of the petitioner's testimony that he did in fact
inform H of that information; moreover, the petitioner failed to produce
evidence at the habeas trial that would have overcome the presumption
that H's decision to pursue a defense of third-party culpability, rather
than self-defense, was sound trial strategy in that neither his signed
statement to the police nor his testimony at his criminal trial included
facts that his counsel considered essential to a claim of self-defense, in
that he did not admit to having a gun nor did he indicate that he feared
for his life.

2. The habeas court's findings that H was unaware that the petitioner had
a gun and had fired it in self-defense and that the petitioner admitted
that he never informed H that he had a gun and shot it in self-defense
were clearly erroneous, but amounted to harmless error, as there was
ample evidence in the record to support the court's conclusion that H
was not deficient in his investigation or in failing to raise a self-defense
claim at trial: despite those erroneous findings, it did not undermine
appellate confidence in the court's fact-finding process, as the petitioner
failed to prove that he had informed H that he had a gun at the time
of the shooting; moreover, even if the petitioner had informed H that
he possessed a gun during the altercation, it would still have been
reasonable for H to forgo further investigation into self-defense when
examining all of the evidence, as the petitioner's signed statement did not
include essential components of a self-defense claim, and the petitioner's
counsel believed he could effectively undermine the state's case by
attacking the credibility of its key witnesses at trial.

Argued April 20—officially released August 3, 2021

*Procedural History*

Petition for a writ of habeas corpus, brought to the
Superior Court in the judicial district of Tolland, where
the court, *Newson, J.*, rendered judgment denying the
petition; thereafter, the court granted the petition for
certification to appeal, and the petitioner appealed to
this court. *Affirmed.*

*Kara E. Moreau*, with whom was *Richard A. Reeve*,
for the appellant (petitioner).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *Tamara Grosso*, assistant state's attorney, for the appellee (respondent).

*Opinion*

ALEXANDER, J. The petitioner, Jared Charles, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that he failed to prove ineffective assistance of counsel. The petitioner argues that his trial counsel was ineffective by failing to investigate and to assert a claim of self-defense and that the habeas court made clearly erroneous factual findings in its memorandum of decision. We affirm the judgment of the habeas court.

This court set forth the following facts in the petitioner's direct appeal. "In the late afternoon of September 25, 2004, the victim, Dennis Faniel, and his cousin, [Jayquan], were riding bicycles in a residential area on Deerfield Avenue in Hartford. The [petitioner], who was close friends with the victim, was driving in the area, and the victim signaled for him to stop. The [petitioner] parked his car a short distance from where the victim and [Jayquan] were then standing and exited his vehicle. While [Jayquan] remained with the bicycles at the end of a driveway, the [petitioner] and the victim began talking and walked up that driveway, toward the rear of a house. The victim demanded a cellular telephone that the victim's brother, then incarcerated, had entrusted to the [petitioner]. The victim's brother had instructed the [petitioner] to keep it away from the victim. The cellular telephone was valuable because it was used in the illegal drug business and contained the contact numbers of numerous customers. When the [petitioner] refused to give it to the victim, the two men began arguing, and the victim made a fist with his right hand as if preparing to hit the [petitioner]. At that point, [Jayquan] moved away from the bicycles. The [petitioner] fired one gunshot, and the victim was hit in the abdomen with a bullet from a nine millimeter semiautomatic firearm. He later died from his injuries.

"The [petitioner] fled the scene with a silver gun in his hand. [Jayquan] ran to the victim, who had fallen to the ground on his knees, and took the victim's .38 caliber revolver from him. He chased the [petitioner] and fired five gunshots at him. After he failed to hit the [petitioner], [Jayquan] threw the revolver in a trash can behind one of the neighborhood houses and went home. The [petitioner], while being pursued by [Jayquan], caught his gray shirt on a fence as he jumped over the fence. He managed to slide out of the shirt and left it behind. The police later retrieved the .38 caliber revolver, the gray shirt with cocaine in one of its pockets and a cellular telephone within the area traveled by [Jayquan] and the [petitioner]. The police did not find a nine millimeter weapon.

"During the investigation, the police interviewed a witness to the incident. Natasha Walker, a former girl-

friend of the victim, was standing outside of her grandfather's house on Deerfield Avenue when she saw the victim and [Jayquan] riding up the street on their bicycles. She also saw the [petitioner], wearing a gray shirt, approach them when they left their bicycles at the end of the driveway. Because the [petitioner] and the victim walked to the rear of the yard, she did not see the shooting but she did hear the gunshot. She stated that [Jayquan] was still at the end of the driveway with the bicycles when the gun was fired. She then saw the [petitioner] run from behind the house with a gun in his right hand, and she heard an additional four or five gunshots shortly after the [petitioner] and [Jayquan] fled the scene." *State* v. *Charles*, 134 Conn. App. 242, 244–45, 39 A.3d 750, cert. denied, 304 Conn. 930, 42 A.3d 392 (2012).

The petitioner was convicted of murder in violation of General Statutes § 53a-54a, carrying a pistol without a permit in violation of General Statutes (Supp. 2004) § 29-35, criminal possession of a pistol in violation of General Statutes (Supp. 2004) § 53a-217c, and possession of narcotics in violation of General Statutes (Rev. to 2003) § 21a-279 (a). Id., 243–44. This court affirmed the judgment of conviction rendered by the trial court. Id., 252.

On March 8, 2013, the self-represented petitioner filed a petition for a writ of habeas corpus. On April 1, 2019, with the assistance of counsel, the petitioner filed an amended petition containing two counts. In the first count, the petitioner alleged ineffective assistance of criminal trial counsel, Walter Hussey, for failing to investigate the viability of self-defense as a defense strategy. In the second count, the petitioner alleged that Hussey was ineffective for failing to assert a claim of self-defense at trial.

A trial on the habeas petition was held on May 23 and 30, 2019. On September 25, 2019, the habeas court issued a memorandum of decision denying each of the petitioner's claims of ineffective assistance of counsel. The court concluded that the petitioner had failed to establish that Hussey's performance was deficient and therefore did not address the issue of prejudice. See, e.g., *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The court determined that Hussey had fully investigated the petitioner's case prior to trial. The court found that there was no reasonable basis for Hussey to pursue a self-defense claim and that it was not "objectively unreasonable" for Hussey to focus on the defense of third-party culpability instead of a self-defense claim. Thereafter, the petitioner filed a petition for certification to appeal from the judgment denying his petition for a writ of habeas corpus. The habeas court granted the petition for certification to appeal. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the petitioner claims that Hussey provided ineffective assistance of counsel by failing to investigate and to assert a claim of self-defense. The respondent, the Commissioner of Correction, counters that the habeas court properly concluded that the petitioner failed to establish his claims of ineffective assistance of criminal trial counsel. We agree with the respondent.

We first set forth the legal principles applicable to the petitioner's appeal. "Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review. . . . Therefore, our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Kellman* v. *Commissioner of Correction*, 178 Conn. App. 63, 68, 174 A.3d 206 (2017).

A criminal defendant is entitled to effective assistance of counsel under both the United States constitution and the Connecticut constitution. *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677–78, 51 A.3d 948 (2012). "To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [supra, 466 U.S. 687]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Although a petitioner can succeed only if he satisfies both prongs, a reviewing court can find against the petitioner on either ground." (Internal quotation marks omitted.) *Davis* v. *Commissioner of Correction*, 198 Conn. App. 345, 352–53, 233 A.3d 1106, cert. denied, 335 Conn. 948, 238 A.3d 18 (2020).

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable . . . . Nevertheless, [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance

after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . .

"Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citation omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 679–80.

I

The petitioner first claims that the court improperly concluded that he failed to prove that Hussey rendered ineffective assistance by failing to investigate a claim of self-defense. Specifically, the petitioner argues that Hussey had a duty to investigate a claim of self-defense based on the circumstances of his case and that the court improperly determined that this duty to investigate exists only when an attorney is informed of a claim of self-defense by the client.

The following additional facts are relevant to those claims. The petitioner, Hussey, and Brian Carlow, the petitioner's expert witness, testified at the habeas trial. Hussey explained that when retained by a criminal defendant, his approach was to get the discovery, share it with his client, and begin to develop a defense theory. During his investigation of the petitioner's case prior to trial, Hussey evaluated the evidence provided during discovery, went to the scene of the crime "many times" and reviewed the discovery material with the petitioner. Hussey testified that he believed the petitioner's written statement to the police to be true, which did indicate that the victim had a gun. Hussey explained, however, that other parts of this statement were inconsistent with a claim of self-defense because the petitioner never said that he had possessed a gun or that he feared for his life, and "those are big bricks that were missing" for a claim of self-defense.[1] Further, Hussey stated that he believed the petitioner's written statement to the police

constituted the truth, and that, "[a]s I sit here today, I still believe him."

In light of the petitioner's statement to the police, in addition to the evidence received through discovery, Hussey pursued a defense of third-party culpability, claiming that Jayquan, who was present at the time of the shooting, had accidentally shot the victim. Hussey testified that he believed the state's key witnesses, Jayquan and Walker, had "baggage" and that he could undermine their credibility at trial. Hussey explained that Jayquan "was one of the worst witnesses I've ever seen." Hussey's goal in undermining the credibility of the state's witnesses was to show that Jayquan's and Walker's versions of events were not true, and that Jayquan could have been the shooter, thereby creating reasonable doubt. Further, Jayquan stated in his signed statement that, after the victim had been shot, he had used the victim's gun to shoot at the petitioner as he was running away. Hussey was unable to locate his notes from the petitioner's case prior to the habeas trial. He could not recall whether he was told by the petitioner that the petitioner was armed with a gun during the confrontation with the victim. Hussey also could not recall talking to the petitioner about self-defense. He further explained, "[t]hat's not to say it didn't happen. It's not to say it happened. I just simply don't recall that."

At his criminal trial, the petitioner testified in a manner consistent with his signed statement, maintaining that he did not have a gun during the altercation with the victim and that he had not been the shooter. The petitioner further testified that he suspected Jayquan did have a gun.

At the habeas trial, the petitioner testified that he "[a]bsolutely" told Hussey that he possessed a nine millimeter firearm during the confrontation with the victim. He said he told Hussey: "[I] had a gun; and so I used it." The petitioner further stated that the victim was "very impulsive" and "very wild" and when the victim pulled a gun on him, he felt "cornered in" and "like my life was threatened." The petitioner stated that he had disclosed all of this information to Hussey. Further, the petitioner testified that his written statement to the police "wasn't completely true" and that he had told Hussey that some parts of the statement were not completely accurate. In addition, the petitioner stated that after receiving discovery in the case, he and Hussey discussed the defense of third-party culpability, and the petitioner did not question that defense. The petitioner further explained that after the conversation in which they discussed the theory of third-party culpability, he and Hussey did not discuss a claim of self-defense. When discussing what the petitioner's testimony would be at his criminal trial, the petitioner said Hussey told him to "repeat what I said

in my statement."

Attorney Carlow testified as the petitioner's expert witness, and stated that, in his opinion, Hussey had not assessed the strengths and weaknesses of each potential defense in the petitioner's case. He testified that it is important for counsel to investigate, to elicit information from the client, and to develop a defense theory of the case. In Carlow's opinion, the evidence in the petitioner's case supported a claim of self-defense, and the petitioner's signed statement did not foreclose a self-defense claim. Carlow agreed that reasonably effective counsel can premise a theory of defense on attacking the credibility of state witnesses and that, in some cases, that would be "the best way to approach [the] situation." Carlow opined that a defense theory premised on attacking the credibility of state witnesses in the petitioner's case was "problematic" because, although Jayquan "had a lot of baggage that [counsel] could clearly utilize," Walker did not.

The habeas court concluded that the petitioner failed to establish that Hussey rendered deficient performance, and found that it was not objectively unreasonable for Hussey to focus on the defense of third-party culpability instead of self-defense. The court stated that "[g]enerally, an attorney is entitled to rely on the information provided by their client in formulating a theory of defense . . . ." The court determined that Hussey had fully investigated the petitioner's case prior to trial and that, after the investigation, Hussey did not believe that a self-defense claim existed.

A

The petitioner first argues that the court improperly concluded that Hussey rendered adequate performance in his investigation of the petitioner's case. The following legal principles are relevant to our resolution of this issue. "Inasmuch as [c]onstitutionally adequate assistance of counsel includes competent pretrial investigation . . . [e]ffective assistance of counsel imposes an obligation [on] the attorney to investigate all surrounding circumstances of the case and to explore all avenues that may potentially lead to facts relevant to the defense of the case. . . . Nevertheless, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; [but] strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." (Citations omitted; internal quotation

marks omitted.) *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 680.

Although "[i]t is the duty of the [defense] lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case . . . the duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." (Citations omitted; internal quotation marks omitted.) *Skakel* v. *Commissioner of Correction*, 329 Conn. 1, 33, 188 A.3d 1 (2018), cert. denied,       U.S.      , 139 S. Ct. 788, 202 L. Ed. 2d 569 (2019). "The reasonableness of counsel's actions may be determined or substantially influenced *by the* [*defendant's*] *own statements or actions*. Counsel's actions are usually based, quite properly, on informed strategic choices made by the [defendant] and on information supplied by the [defendant]. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." (Emphasis added; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 681.

In circumstances similar to the present case, this court has held that failure to investigate a claim of self-defense does not constitute ineffective assistance of counsel. In *McClam* v. *Commissioner of Correction*, 98 Conn. App. 432, 435, 909 A.2d 72 (2006), cert. denied, 281 Conn. 907, 916 A.2d 49 (2007), the petitioner asserted a claim of ineffective assistance of counsel, alleging, inter alia, that his trial counsel had failed to raise a self-defense claim. This court affirmed the determination of the habeas court that it was not unreasonable for trial counsel to decide not to assert a claim of self-defense because the petitioner had denied being the shooter to trial counsel and maintained this position in his testimony during his criminal trial. Id., 437.

In *State* v. *Silva*, 65 Conn. App. 234, 254–55, 783 A.2d 7, cert. denied, 258 Conn. 929, 783 A.2d 1031 (2001),[2] the defendant argued, inter alia, that his trial counsel was ineffective by failing to investigate and to pursue a defense of self-defense. This court agreed with the habeas court's conclusion that it was reasonable for defense counsel not to pursue a theory of self-defense because the defendant had insisted that he was not the shooter. Id., 259–60.

The facts of the present case are similar to those in *McClam* and *Silva*. After examining all of the evidence, Hussey determined that a theory of third-party culpability was the strongest defense. In reviewing the petitioner's signed statement to the police, Hussey concluded that the facts in this statement were not consistent with self-defense because the petitioner did not state that he had a gun or that he had feared for his life, both of which are essential components for a claim of self-defense. See General Statutes § 53a-19. "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 681. Further, Hussey testified at the habeas trial that he could not recall whether or not the petitioner had informed him he had possessed a gun during the altercation, and the habeas court had the sole ability to determine the credibility of the petitioner's testimony that he did in fact inform Hussey of this information. "The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Gonzalez* v. *Commissioner of Correction*, 145 Conn. App. 16, 21, 75 A.3d 705, cert. denied, 310 Conn. 932, 78 A.3d 858 (2013).

In his brief, the petitioner contends that the habeas court's ruling was premised on an assumption that self-defense needs to be investigated by counsel only if a client tells his lawyer a story that is consistent with self-defense. We disagree. The court determined that Hussey had fully investigated the petitioner's case and, after investigation, concluded that self-defense was not a viable defense theory. The court found that, after such investigation, Hussey determined that in light of the evidence and his belief that Jayquan lacked credibility, a defense of third-party culpability implicating Jayquan was the petitioner's best defense. We conclude that the court properly determined that Hussey's investigation had been reasonable.

B

The petitioner next claims that the habeas court improperly determined that Hussey was not deficient by failing to assert a claim of self-defense at his criminal trial. We do not agree.

The following legal principles are relevant to our resolution of this issue. "[A]s a general rule, a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if there [was] no . . . tactical justification for the course taken." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 166 Conn. App. 95, 140, 140 A.3d 1087 (2016), aff'd, 330 Conn. 520, 198 A.3d 52

(2019). "It is axiomatic that decisions of trial strategy and tactics rest with the attorney. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Citations omitted; internal quotation marks omitted.) *Meletrich* v. *Commissioner of Correction*, 332 Conn. 615, 627, 212 A.3d 678 (2019). "[T]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. . . . [A] reviewing court is required not simply to give [the trial attorney] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as [he] did . . . ." (Internal quotation marks omitted.) Id., 637. The strong presumption that counsel's efforts are reasonable applies to both counsel's investigation and decisions regarding what defense to pursue at trial. See *Thompson* v. *Commissioner of Correction*, 131 Conn. App. 671, 698, 27 A.3d 86, cert. denied, 303 Conn. 902, 31 A.3d 1177 (2011); *Veal* v. *Warden*, 28 Conn. App. 425, 434, 611 A.2d 911, cert. denied, 224 Conn. 902, 615 A.2d 1046 (1992).

The petitioner failed to produce evidence at the habeas trial that would overcome the presumption that Hussey's decision to pursue a defense of third-party culpability, rather than self-defense, was sound trial strategy. As noted previously, neither the petitioner's signed statement to the police nor his testimony at his criminal trial included facts that Hussey considered essential to a claim of self-defense. Specifically, the petitioner did not admit to having a gun nor did he indicate that he feared for his life. The court found that Hussey believed Jayquan lacked credibility and he believed he could effectively undermine the credibility of the state's witnesses during cross-examination to establish the third-party culpability defense.

Although Carlow testified that, in his opinion, a claim of self-defense was not foreclosed by the evidence in the petitioner's criminal trial, we note that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." (Internal quotation marks omitted.) *Meletrich* v. *Commissioner of Correction*, supra, 332 Conn. 637. After reviewing the evidence with his client, Hussey determined that the best trial strategy was a claim of third-party culpability, and, although there may have been more than one possible defense, our position as a reviewing court is "to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as [he] did . . . ." (Internal quotation marks omitted.) Id.

On our review of the record, we conclude that the

habeas court properly determined that the petitioner failed to demonstrate that it was objectively unreasonable for Hussey to pursue a defense of third-party culpability instead of self-defense. Because we agree with the habeas court that the petitioner failed to establish the deficient performance prong, his claim of ineffective assistance of counsel must fail. See *Davis* v. *Commissioner of Correction*, supra, 198 Conn. App. 352–53.

## II

We next address the petitioner's contention that the court improperly found that (1) Hussey was unaware that the petitioner had a gun and had fired it in self-defense and (2) the petitioner admitted that he never informed Hussey that he had a gun and shot it in self-defense. In his brief, the respondent agrees that "the habeas court erroneously credited Hussey's purported testimony that he was unaware that the petitioner was armed with a gun" and also acknowledged that the petitioner testified that he had informed Hussey that he had shot the victim. Although we agree that these factual findings were clearly erroneous, we conclude that this error was harmless, as there was ample evidence in the record to support the court's conclusion that Hussey was not deficient in his investigation or in failing to raise a self-defense claim at trial.

In its memorandum of decision, the court credited Hussey's testimony that he was unaware the petitioner had a gun at the time of the shooting. Further, the court stated that the petitioner admitted in his testimony that "he either failed to inform his attorney, or actively misinformed him, of facts that could have been used to support a claim of self-defense . . . ."

We apply the clearly erroneous standard of review to the habeas court's factual findings. "[A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Collins* v. *Commissioner of Correction*, 202 Conn. App. 789, 812, 246 A.3d 1047, cert. denied, 336 Conn. 931, 248 A.3d 1 (2021). "[T]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *David P.* v. *Commissioner of Correction*, 167 Conn. App. 455, 470, 143 A.3d 1158, cert. denied, 323 Conn. 921, 150 A.3d 1150 (2016).

Although Hussey initially stated that the petitioner never told him he had a gun or shot it in self-defense, Hussey later clarified that he had no recollection as to whether the petitioner had informed him that he

possessed a gun. As a result, the record does not support the finding that Hussey recalled that he was never told by the petitioner that he had possessed a gun. Therefore, the habeas court's finding that Hussey was unaware that the petitioner had a gun at the time of the shooting was clearly erroneous. Additionally, the petitioner testified that he had informed trial counsel that he had possessed a gun, used the gun, and felt "cornered in." As such, the court's finding that the petitioner admitted that he either failed to inform his attorney or actively misinformed him of facts that could have been used to support a claim of self-defense also was clearly erroneous.

These erroneous findings do not " 'undermine appellate confidence' " in the habeas court's fact-finding process, and we therefore conclude the error was harmless. *Autry* v. *Hosey*, 200 Conn. App. 795, 801, 239 A.3d 381 (2020). "[I]t is well established that a petitioner in a habeas proceeding cannot rely on mere conjecture or speculation to satisfy either the performance or prejudice prong [of *Strickland*] but must instead offer demonstrable evidence in support of his claim." (Internal quotation marks omitted.) *Martinez* v. *Commissioner of Correction*, 147 Conn. App. 307, 315–16, 82 A.3d 666 (2013), cert. denied, 311 Conn. 917, 85 A.3d 652 (2014). At the habeas trial, Hussey testified that he could not recall whether the petitioner told him he had possessed a gun, and the habeas court did not credit the petitioner's testimony that he informed Hussey of this fact. The court noted that the petitioner admitted that his statements to the police and his testimony at trial were "not entirely truthful . . . ." "The court, having had a firsthand vantage point from which to observe the petitioner testify . . . and assess the truthfulness of his testimony, was not obligated to accept as true the petitioner's version of the facts . . . ." *Adkins* v. *Commissioner of Correction*, 185 Conn. App. 139, 175–76, 196 A.3d 1149, cert. denied, 330 Conn. 946, 196 A.3d 326 (2018). Thus, despite clearly erroneous factual findings, the petitioner failed to prove that he had informed Hussey that he had a gun at the time of the shooting. Moreover, even if we assume, arguendo, that the petitioner had informed trial counsel that he possessed a gun during the altercation, it would still be reasonable for Hussey to forgo further investigation into self-defense when examining all of the evidence. The petitioner's signed statement did not include essential components of a self-defense claim, and Hussey believed he could effectively undermine the state's case by attacking the credibility of the state's key witnesses at trial. By doing so, Hussey's goal was to create doubt as to the reliability of Jayquan's and Walker's testimony, thereby creating reasonable doubt and raising the inference that Jayquan was the shooter. There is ample evidence in the record, including the petitioner's statements to the police and his testimony at the criminal

trial, to support the court's conclusion that the petitioner failed to sustain his burden of establishing his claims of ineffective assistance.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defense of self-defense is codified in General Statutes § 53a-19. "As interpreted by our Supreme Court, § 53a-19 (a) provides that a person may justifiably use deadly physical force in self-defense only if he reasonably believes both that (1) his attacker is using or about to use deadly physical force against him, or is inflicting or about to inflict great bodily harm, and (2) that deadly physical force is necessary to repel such attack." (Emphasis omitted; footnote omitted; internal quotation marks omitted.) *Miller* v. *Commissioner of Correction*, 154 Conn. App. 78, 88–89, 105 A.3d 294 (2014), cert. denied, 315 Conn. 920, 107 A.3d 959 (2015). In analyzing whether deadly physical force was necessary, the jury must use a subjective-objective test. See *State* v. *O'Bryan*, 318 Conn. 621, 632, 123 A.3d 398 (2015). Section 53a-19 (b) (1) further provides in relevant part that "a person is not justified in using deadly physical force upon another person if he or she knows that he or she can avoid the necessity of using such force with complete safety . . . by retreating . . . ."

[2] *Silva* involved the resolution of two appeals by the defendant—a direct appeal from the judgment of conviction in the defendant's criminal proceeding and an appeal from the judgment of the habeas court reinstating the defendant's right to a direct appeal, but denying his request to vacate the judgment of conviction. See *State* v. *Silva*, supra, 65 Conn. App. 236–38.